Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Spencer Wolgang (SW 2389)
swolgang@ipcounselors.com
Mary Kate Brennan (MB 5595)
mbrennan@ipcounselors.com
Brieanne Scully (BS 3711)
bscully@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 2520
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Allstar Marketing Group*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTAR MARKETING GROUP,<br><br>*Plaintiff*<br><br>v.<br><br>24X7, 32SPORT, AILEILEI, AIR SUPPLY, AIXIAODEYANJING, ALLFLYYO88, ANGELY2015, ASDY SAY ZZ9, ASYOULIKE2016, BABYCUTE, BANNA, BAOXIAOXIAO, BASIC, BBGASD22212, BEAUTY GIRL AND YOU, BIGSUNSHINE, BLUESKY911, BOOST, BRIDGENORTHSTORE, BUBBLESUMMER, CARIBBEANBLUE, C-BEAR, CGBOY, CHENCHENNANZHUANG, CHENDISHENG2016, CHILDOLD, CONCORD0807, COURAGEDELIGHT, CREATIVITY, DANAE6, DANMEGGS, DENNY'S STORE, DJNPJ, ETERNAL JO, FASHION SHOPPING 888, FATE STAY NIGHT, FEIFEIR STORE, FJXMWSSD TRADE CO.,LTD., FLI, FLYFANG, FORE FLOWERS, FULLLOVER, FUNNYSTORE88, | CIVIL ACTION No. ___<br><br><br><br>**COMPLAINT**<br><br>**Jury Trial Requested**<br><br>**FILED UNDER SEAL** |

FYHOMYXAIO, GEEKMOM, GLOOMYMONDY, GLUTINOUSRICE, GT01, GUANGZHOU FEIXIANG TRADING CO. LTD., HANGINGFRIEDDAY, HAPPYDEAL2016, HEADACHES, HELLOLENYA, HGFUIIJ, HIFINE, HISSCREEN, HOME HAPPINESS, HONGJ STORE, HUAAO, HUANGYUECHAN908, INDEXOF, JACK LIN FASHION STORE, JACKY MALL, JIA DA ANG, JIAJIA820, JIANGMEIHUA018, KAITONGCHENG, KANGDIGITAL, KIDTOY, KOLOMNA, KUAKUA, LALAMEI, LANGXIN WATCHES, LAOXIAOMI, LELECOOK, LELECOOKING, LEONARDMR, LICHENGLI21, LINENG, LITTLELEAF, LIUYANLI, LOVEYOUBAG, LOVING YOU OUTDOOR PRODUCTS STORE, LVYILVYI, LYDIASWEET, LZT STORE, MARS STORE, MAYBUYMOON, MCOLLECTIONSM, MISS CAI'S BEST SERVICE STORE, MJSZYOUTH0114, MLQJMH, MR.GRIFFON, NANTONG XINXIA TEXTILE &GARMENT CO.LTD, NEWANG, NINGCHENQIAN1225, NO.7 PARTYQUEEN, NONOMORE, ONCETHEINTERSECTION, OVERSEASELLER, PARTYTIME, PEARLOOK, PETERSHOP, PLAY BEAUTIFULLY, POPPYHENLER, QEARL SHEN, QJSHOP, QUICKOOL464, REAL AND REAL CO.,LTD, ROMANTICFULLINHOME, RONGZI, ROSABEL, SATAY SATAY EEE, SENSORY WORLD, SEXY BOUTIQUE STORE, SEXY GIRL, SHALLOW SING, SHANGHAI 2CONNECT TRADING CO., LTD, SHANLIANGDENGCHANG, SHAOLING01YANG, SHUIGE1, SINCEREL SHOP, SMALL WEST ARTICLES FOR DAILY USE, SMARTLIFE123, SMART-SECURITY LIVING, SOCOOLCOOL, SUNSETLOW, SUPERSTORE BEST, SURPRISING, TANGJIACHUAN, TANGLILAN, TANGYAOKUN, TASTEFORLIFE, THE BEST SHOP 8, TIWEIDFWER, TOOL, TRICKHA, TRUMAN SHOW, TWELEVESTORE, TYSTORE,

UNTILTHEEND, WAHADANDAN, WAITFORYOU2017, WANG KUN FURNITURE STORES, WANG&SUN1314521, WANGDDIY.BEATU, WANGDING, WEI FENG HOME SUPPLIES FRANCHISE STORES, WEIWEIRENZHEN, WFFW, WIN MARKET INTERTIONAL, WRR1985, XIANGXIEGO, XIAOQINGHOUSE1111, XIAOSHIP, XINNIANKUAILE, XXSTORE, YAC GROUP, YAYAXUE, YINGLIYING, YINGSONG260, YOUSHILING, YRYTRADE, YUEYUESHOPPING, YUINGRT, YUYAO FASHION SHOES, ZHANGYUMENG AND ZIYOUFSHIZD,

*Defendants*

Plaintiff Allstar Marketing Group ("Allstar" or "Plaintiff"), a New York corporation, by and through its undersigned counsel, alleges as follows:

## NATURE OF THE ACTION

This action involves claims for trademark infringement of Plaintiff's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.*; counterfeiting of Plaintiff's federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c); false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of Plaintiff's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims (the "Action"), arising from Defendants 24x7, 32SPORT, aileilei, Air Supply, aixiaodeyanjing, allflyyo88, angely2015, asdy say ZZ9, asyoulike2016, Babycute, Banna, baoxiaoxiao, Basic, bbgasd22212, beauty girl and you, Bigsunshine, Bluesky911, BOOST, Bridgenorthstore, bubblesummer, caribbeanblue, c-bear, cgboy, chenchennanzhuang, chendisheng2016, childold,

concord0807, couragedelight, Creativity, Danae6, danmeggs, denny's store, DJNPJ, Eternal Jo, fashion shopping 888, Fate Stay Night, FeiFeir Store, FJXMWSSD Trade Co.,LTD., fli, flyfang, Fore flowers, FULLLOVER, funnystore88, fyhomyXAIO, geekmom, gloomymondy, glutinousrice, GT01, Guangzhou Feixiang Trading Co. Ltd., HangingFriedDay, happyDeal2016, headaches, hellolenya, hgfuiij, Hifine, Hisscreen, Home happiness, HongJ Store, HUAAO, Huangyuechan908, IndexOf, Jack Lin Fashion store, Jacky Mall, JIA DA ANG, jiajia820, jiangmeihua018, kaitongcheng, kangdigital, KIDTOY, kolomna, kuakua, LaLaMei, LangXin Watches, Laoxiaomi, LeLecook, LeLeCooking, Leonardmr, lichengli21, Lineng, littleleaf, liuyanli, loveyoubag, Loving You Outdoor products store, Lvyilvyi, LydiaSweet, LZT Store, Mars Store, Maybuymoon, McollectionsM, Miss Cai's Best Service Store, mjszyouth0114, MlqJmh, Mr.griffon, NANTONG XINXIA TEXTILE &GARMENT CO.LTD, newang, ningchenqian1225, No.7 PartyQueen, noNoMore, Oncetheintersection, Overseaseller, partytime, pearlook, PeterShop, Play Beautifully, Poppyhenler, Qearl Shen, QJSHOP, Quickool464, Real and Real Co.,Ltd, romanticfullinhome, rongzi, Rosabel, Satay Satay eee, Sensory World, Sexy Boutique Store, Sexy Girl, Shallow sing, Shanghai 2Connect Trading Co., Ltd, shanliangdengchang, shaoling01yang, shuige1, sincerel shop, Small west articles for daily use, smartlife123, smart-security living, socoolcool, Sunsetlow, Superstore Best, Surprising, tangjiachuan, tanglilan, tangyaokun, tasteforlife, The best shop 8, Tiweidfwer, Tool, TRICKHA, Truman Show, Twelevestore, TYSTORE, Untiltheend, wahadandan, Waitforyou2017, Wang kun furniture stores, wang&sun1314521, WANGDDIY.BEATU, WangDing, Wei Feng home supplies franchise stores, Weiweirenzhen, wffw, win market intertional, wrr1985, xiangxiego, xiaoqinghouse1111, xiaoship, xinniankuaile, xxstore, YAC Group, yayaxue, yingliying, Yingsong260, youshiling, YRYTrade, yueyueshopping, Yuingrt, YuYao fashion shoes, zhangyumeng and ziyoufshizd

(hereinafter collectively referred to as "Defendants" or individually as "Defendant") infringement of the Snuggie Marks (as defined *infra*) and Snuggie Works (as defined *infra*), including, without limitation, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiff's Snuggie Products (as defined *infra*).

## JURISDICTION AND VENUE

1.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*; pursuant to the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

2.      Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this judicial district, and/or derive substantial revenue from their business transactions in New York and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to

Plaintiff in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

      a.  Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Wish (as defined *infra*) as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the U.S., including New York, can view the one or more of Defendants' Merchant Storefronts (as defined *infra*) that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra*) and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

      b.  Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale

quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.    Upon information and belief, a majority of Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S.

d.    Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address (as defined *infra*).

e.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

f.    Upon information and belief, Defendants are aware of Plaintiff, its Snuggie Products, Snuggie Marks and Snuggie Works, and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiff in the U.S. and specifically, in New York and this judicial district, as Plaintiff conducts business in, and is headquartered in, New York.

3.    Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in this judicial district.

## THE PARTIES

4.    Plaintiff is a New York corporation, with a principal place of business at 2 Skyline Drive, Hawthorne, NY 10532.

5.    Upon information and belief, Defendants are merchants on the Wish.com online marketplace platform, which, upon information and belief, is owned by ContextLogic, Inc., a

Delaware corporation with a principal place of business at One Sansome Street, 40th Floor, San

Francisco, CA 94104, through which Defendants offer for sale and/or sell Counterfeit Products.

## GENERAL ALLEGATIONS

### Plaintiff and Its Well-Known Snuggie Products

6.      Plaintiff is a leading developer, producer, marketer and distributor of quality,

innovative consumer products ("Allstar Products").  Plaintiff promotes and sells the Allstar

Products throughout the U.S. and the world through major retailers and well-known mass retail

outlets, including, but not limited to: Wal-Mart, Target, Rite-Aid, CVS, Walgreens, Kmart and

Bed Bath & Beyond, as well as through its retail customers' websites and a network of

international distributors, among other channels of trade.

7.      One of Allstar's most popular and successful products is Snuggie, a body-length

blanket that has sleeves ("Snuggie Products"). The Snuggie Products are available in a variety of

fabrics, colors, patterns and sizes, and does not slip and slide like a regular blanket, while keeping

consumers warm and their hands free.  Images of the Snuggie Products are attached hereto as

**Exhibit A** and incorporated herein by reference.

8.      In addition to the channels described above, Allstar also markets and sells the

Snuggie  Products  through  its  website  entirely  dedicated  to  the  Snuggie  Products,

https://snuggiestore.com/ (the "Website").

9.      Beyond the classic Snuggie as described above, Plaintiff has also released

additional products under its Snuggie brand, such as Snuggie Tails, which is marketed towards

children.

10.     While Allstar has gained significant common law trademark and other rights in its Snuggie Products, through use, advertising, and promotion, Allstar has also protected its valuable rights by filing for and obtaining federal trademark registrations.

11.     For example, Allstar is the owner of U.S. Trademark Registration Nos. 4,418,776, 4,115,279 and 3,775,590 for "SNUGGIE" for goods in Class 25, 20 and 24, U.S. Trademark Registration No. 5,190,965 for **Snuggie** for goods in Classes 20 and 24 and U.S. Trademark Registration No. 2,351,180 for **Snuggies** for goods in Class 25 (collectively, "Snuggie Marks").  True and correct copies of the registration certificates for the Snuggie Marks are attached hereto as **Exhibit B** and incorporated herein by reference.

12.     The Snuggie Marks are currently in use in commerce in connection with the Snuggie Products.  The Snuggie Marks were first used in commerce on or before the dates of first use as reflected in the registration certificates attached hereto as Exhibit B.

13.     U.S. Trademark Registration Nos. 4,115,279 and 3,775,590 and 2,351,180 are valid, subsisting and incontestable.

14.     In addition, Plaintiff is also the owner of both registered and unregistered copyrights in and related to the Snuggie Products.

15.     For example, Allstar is the owner of U.S. Copyright Reg. VAu 1-026-184, covering the Snuggie Blue Packaging (2010) and U.S. Copyright Reg. TX 7-001-784, covering the Snuggie Website (getsnuggie.com) (collectively, the "Snuggie Works").  True and correct copies of the U.S. Copyright registration certificates for the Snuggie Works are attached hereto as **Exhibit C** and incorporated herein by reference.

9

16.     Plaintiff has spent substantial time, money and effort in building up and developing consumer recognition, awareness and goodwill in its Snuggie Products, Snuggie Marks and Snuggie Works.

17.     The success of the Snuggie Products is due in part to Plaintiff's marketing and promotional efforts.  These efforts include advertising and promotion through television, the Website, retailer websites, print and internet-based advertising and placement of the Snuggie Products at dozens of authorized major retail outlets, both domestically and abroad, including New York.

18.     Plaintiff's success is also due to its use of high quality materials and processes in making the Snuggie Products.

19.     Additionally, Plaintiff owes a substantial amount of the success of the Snuggie Products to its consumers, and word-of-mouth buzz that its consumers have generated.

20.     Plaintiff's efforts, the quality of Plaintiff's products, and the word-of-mouth buzz generated by its consumers have made the Snuggie Marks, Snuggie Works and Snuggie Products prominently placed in the minds of the public.  Members of the public and retailers have become familiar with Plaintiff's Snuggie Marks, Snuggie Works and Snuggie Products, and have come to associate them exclusively with Plaintiff.  Plaintiff has acquired a valuable reputation and goodwill among the public as a result of such association.

21.     Plaintiff has gone to great lengths to protect its interests to the Snuggie Products, Snuggie Marks and Snuggie Works.  No one other than Plaintiff and its authorized licensees and distributors is authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing the Snuggie Marks or Snuggie Works without the express permission of Plaintiff.

## Wish and Defendants' User Accounts

22.     Wish.com is an online marketplace and e-commerce platform that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products originating primarily from China,[1] among other locations, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York (hereinafter, "Wish").

23.     A majority of the third-party merchants that have User Accounts with and operate Merchant Storefronts on Wish, like Defendants, are located in China.[2] As of May 2015, over 40 million items from 100,000 User Accounts were available on Wish.[3] Between June 2014 and May 2015, nearly 100 million distinct User Accounts became registered on Wish.[4] Currently, Wish claims a base of over 300 million users.[5] As one of the leaders of the worldwide e-commerce and digital retail market, Wish has generated billions in sales worldwide.[6] Sales to the U.S. make up a significant percentage of the business done on Wish. For example, online sales account for 8.6% of all retail transactions in the U.S., and nearly 8% of online shopping done by teenagers was performed using Wish, which is second only to Amazon.com.[7] On Cyber Monday of 2017, Wish

---

[1] *See* Armando Roggio, *Ecommerce Lessons from the Wish Shopping App*, PRACTICALECOMMERCE (Jan. 7, 2015), https://www.practicalecommerce.com/Ecommerce-Lessons-from-the-Wish-Shopping-App.
[2] *See* Greg Bensinger, *Wish, a Direct-From-China Shopping App, Lures Bargain Hunters*, WALL STREET JOURNAL (May 19, 2015), https://www.wsj.com/articles/wish-a-direct-from-china-shopping-app-lures-bargain-hunters-1431909072.
[3] *See id.*
[4] *See id.*
[5] *See* WISH.COM, https://www.wish.com/careers.
[6]*See* Connie Loizos, *Wish is Raising Again, and Giving Late-Stage Investors Protection*, TECHCRUNCH.COM (Oct. 28, 2016), https://techcrunch.com/2016/10/28/wish-is-raising-again-and-giving-late-stage-investors-protection/.
[7] *See* Deena M. Amato-McCoy, *Study: Teens Twice as Likely to Shop Online Than Adults*, CHAINSTOREAGE.COM (Oct. 16, 2017), https://www.chainstoreage.com/technology/study-teens-twice-likely-shop-online-adults/.

accounted for 6.2% of teenager spending.[8]  Currently, Wish is valued at over $8 billion, which is more than the market value of three of the largest traditional retailers in the U.S.[9]

24.     Wish aggressively uses the internet, including Facebook, Google and Pinterest, to market itself and the products offered for sale and/or sold by its third-party merchant users to potential consumers, particularly in the U.S.  For example, Wish is in the top-five largest advertisers on the aforementioned popular search engines and social media websites.[10]  In 2015, Wish spent approximately $100 million on advertisements on Facebook alone.[11]

25.     As recently addressed in news reports,[12] and as reflected in the federal lawsuits filed against third-party merchants offering for sale and selling infringing and/or counterfeit products on Wish,[13] an astronomical number of counterfeit and infringing products are offered for sale and sold on Wish at a rampant rate.[14]

26.     Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Wish as well as potentially yet undiscovered additional online marketplace platforms.

---

[8] *See* Marianne Wilson, *Teens hot on Black Friday, but cool on Cyber Monday*, CHAINSTORAGE.COM (Nov. 29, 2017), https://www.chainstoreage.com/real-estate/teens-hot-black-friday-cool-cyber-monday/.
[9] *See* Parmy Olson, *At $8.5 Billion, Shopping App 'Wish' Is Now Worth More Than Sears, Macy's and JC Penney Combined*, FORBES, https://www.forbes.com/sites/parmyolson/2017/09/20/wish-8-billion-funding-amazon/#c360ab961e1d.
[10] *See* SENSORTOWER, MOBILE ADVERTISING ATLAS, Q2 2017 REPORT, *available at* https://s3.amazonaws.com/sensortower-itunes/Quarterly+Reports/Sensor-Tower-Q2-2017-Ad-Intel-Data-Digest.pdf?=landing.
[11] *See* Jason Del Rey, *Meet Wish, the $3 Billion App That Could Be The Next Walmart*, RECODE (Dec. 28, 2015), https://www.recode.net/2015/12/28/11621724/meet-wish-the-3-billion-app-that-could-be-the-next-walmart.
[12] *See* Andi Sykes, *Specialized Wages Ware on Counterfeiters* (Dec. 9, 2016), http://singletrackworld.com/2016/12/specialized-wages-war-on-counterfeiters/
[13] *See, e.g., Specialized Bicycle Components, Inc. v. in-style1820, et al.*, Civil Case No. 16-cv-62711 (S.D. Fl. Nov. 17, 2016) and *David Gilmour Music Ltd. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, Civil Case No. 17-cv-7763 (N.D. Ill., Nov.1, 2017).
[14] *See* Tom Hoffarth, *Lakers' Wish List Cheapened by the Dozen*, DAILY NEWS (Sept. 22, 2017), http://www.dailynews.com/2017/09/22/hoffarth-lakers-wish-list-cheapened-by-the-dozen/.

27.     Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

28.     Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

29.     Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

### Defendants' Wrongful and Infringing Conduct

30.     Particularly in light of Plaintiff's success with its Snuggie Products, as well as the reputation they have gained, Plaintiff and its Snuggie Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiff has amassed in its Snuggie Products, Snuggie Marks and the works embodied in the Snuggie Works and Plaintiff investigates and enforces against such activities.

31.     As part of these efforts, Plaintiff retained New Alchemy Limited ("NAL"), a company that provides intellectual property infringement research services, to investigate and research manufacturers, wholesalers, retailers and/or other merchants offering for sale and/or selling Counterfeit Products on online marketplace platforms such as Wish.

32.     Through NAL's investigative and enforcement efforts, Plaintiff learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling products bearing or used in connection with the Snuggie Marks and/or Snuggie Works,

and/or products in packaging and/or containing labels bearing the Snuggie Marks and/or Snuggie Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Snuggie Marks and/or Snuggie Works and/or products that are identical or confusingly or substantially similar to the Snuggie Products (collectively referred to as, "Infringing Product(s)" or "Counterfeit Product(s)") to U.S. consumers, including those located in the state of New York, through Defendants' User Accounts and Merchant Storefronts. Printouts of listings for Counterfeit Products from Defendants' User Accounts and Merchant Storefronts are included in **Exhibit D** attached hereto and incorporated herein by reference.

33.     Defendants are not, and have never been, authorized by Plaintiff or any of its authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the Snuggie Products or to use the Snuggie Marks and Snuggie Works, or any marks or artwork that are confusingly or substantially similar to the Snuggie Marks or Snuggie Works.

34.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiff's Snuggie Products, only with minor variations that no ordinary consumer would recognize.

35.     During its investigation, NAL identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located in in New York (the "New York Address") and verified that each Defendant provides shipping to the New York Address. Printouts of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in **Exhibit D** attached hereto and incorporated herein by reference.

36.     NAL confirmed that each Defendant was and/or is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting

payment for such Counterfeit Products in U.S. Dollars through Wish's own payment processing system ("Wish Payment System"), or through accounts with the payment processing agency PayPal, Inc. ("PayPal"), and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. NAL's findings are supported by Defendants' listings for Counterfeit Products and/or the checkout pages for the Counterfeit Products, which are included in **Exhibit D** attached hereto and incorporated herein by reference.

37.     For example, below on the left is an image of one of Plaintiff's Snuggie Products, which typically retails for $14.99. Depicted below on the right is a listing for Defendant baoxiaoxiao's Counterfeit Product ("baoxiaoxiao Infringing Listing" and "baoxiaoxiao Counterfeit Product," respectively). The baoxiaoxiao Infringing Listing appears on Defendant baoxiaoxiao's Merchant Storefront, https://www.wish.com/c/5a7318b33c1dc625deec2b4b, and offers the baoxiaoxiao Counterfeit Product for $11.00 per item, using, featuring and/or incorporating one or more of the Snuggie Marks, the Snuggie Works, and/or confusingly or substantially similar marks or artwork in the listing title "Winter Soft Warm Fleece **Snuggie** Blanket with Sleeves Cozy Wrap Robe Cloak" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the baoxiaoxiao Counterfeit Product is virtually identical to one of Plaintiff's Snuggie Products and features and/or incorporates one or more of the Snuggie Works and Snuggie Marks. There is no question that the baoxiaoxiao Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Snuggie Products or that the baoxiaoxiao Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Snuggie Works and Snuggie Marks:

**Snuggie Product**

**baoxiaoxiao Counterfeit Product**





38.    By way of another example, below on the left is an image of one of Plaintiff's Snuggie Products, which typically retails for $14.99. Depicted below on the right is a listing for Defendant HUAAO's Counterfeit Product ("HUAAO Infringing Listing" and "HUAAO Counterfeit Product," respectively). The HUAAO Infringing Listing appears on Defendant HUAAO's Merchant Storefront, https://www.wish.com/c/5938c0ebb9df076ffb714015, and offers the HUAAO Counterfeit Product for $14.00 per item, using, featuring and/or incorporating one or more of the Snuggie Marks, the Snuggie Works, and/or confusingly or substantially similar marks or artwork in the listing title "Winter Soft Warm Fleece **Snuggie** Blanket with Sleeves Cozy Wrap Robe Cloak" (emphasis added) and in the descriptions and/or product images in the body of the listing. Further, the HUAAO Counterfeit Product is virtually identical to one of Plaintiff's Snuggie Products and features and/or incorporates one or more of the Snuggie Works and Snuggie Marks. There is no question that the HUAAO Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiff's Snuggie Products or that the HUAAO Counterfeit Product is otherwise approved by or sourced from Plaintiff, thereby trading

off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Snuggie

Works and Snuggie Marks:

**Snuggie Product**                                    **HUAAO Counterfeit Product**

                                   

39.     As another example, below on the left is an image of one of Plaintiff's Snuggie

Products, which typically retails for $14.99.  Depicted below on the right is a listing for Defendant

TYSTORE's Counterfeit Product ("TYSTORE Infringing Listing" and "TYSTORE Counterfeit

Product," respectively).  The TYSTORE Infringing Listing appears on Defendant TYSTORE's

Merchant   Storefront,   https://www.wish.com/c/5b1429e9a87f5160b6e714f1,   and   offers   the

TYSTORE Counterfeit Product for $14.00 per item, using, featuring and/or incorporating one or

more of the Snuggie Marks, the Snuggie Works, and/or confusingly or substantially similar marks

or artwork in the listing title "Winter Soft Warm Fleece **Snuggie** Blanket with Sleeves Cozy Wrap

Robe Cloak" (emphasis added) and in the descriptions and/or product images in the body of the

listing.  Further, the TYSTORE Counterfeit Product is virtually identical to one of Plaintiff's

Snuggie Products and features and/or incorporates one or more of the Snuggie Works and Snuggie

Marks.  There is no question that the TYSTORE Counterfeit Product is designed to confuse and

mislead consumers into believing that they are purchasing one of Plaintiff's Snuggie Products or

that the TYSTORE Counterfeit Product is otherwise approved by or sourced from Plaintiff,

thereby trading off of the goodwill and reputation of Plaintiff by engaging in the unauthorized use

of the Snuggie Works and Snuggie Marks:

| **Snuggie Product** | **TYSTORE Counterfeit Product** |
|:---:|:---:|
|  |  |

40.   By these dealings in Counterfeit Products (including, without limitation, copying,

manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying,

offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiff's exclusive

rights in the Snuggie Marks and Snuggie Works, and have used marks, images and artwork that

are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or

infringement of the Snuggie Marks and Snuggie Works in order to confuse consumers into

believing that such Counterfeit Products are Snuggie Products and aid in the promotion and sales

of their Counterfeit Products. Defendants' conduct began long after Plaintiff's adoption and use

of the Snuggie Marks and Snuggie Works, after Plaintiff obtained the federal registrations in the

Snuggie Marks and Snuggie Works, as alleged above, and after Plaintiff's Snuggie Products,

Snuggie Marks and Snuggie Works became well-known to the purchasing public.

41.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiff's ownership of the Snuggie Marks and Snuggie Works, of the fame and incalculable goodwill associated therewith and of the popularity and success of the Snuggie Products, and in bad faith adopted the Snuggie Marks and Snuggie Works.

42.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiff, the Snuggie Marks, Snuggie Works and Snuggie Product.

43.     Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and have deceived and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiff, thereby damaging Plaintiff.

44.     In engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiff: infringed and counterfeited the Snuggie Marks, infringed the Snuggie Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiff's expense.

45. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Trademark Counterfeiting Under Sections 32, 34 and 35 of the Lanham Act,**
**15 U.S.C. §§ 1114(1)(b), 1116(d) and 1117(b)-(c)))**

46.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

47.     Plaintiff is the exclusive owner of all right and title to the Snuggie Marks.

48.     Plaintiff has continuously used the Snuggie Marks in interstate commerce since on or before the dates of first use as reflected in the registrations attached hereto as **Exhibit B**.

49.     Without Plaintiff's authorization or consent, with knowledge of Plaintiff's well-known and prior rights in its Snuggie Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the Snuggie Marks and/or used spurious designations that are identical with, or substantially indistinguishable from, the Snuggie Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

50.     Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with Plaintiff, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the Snuggie Marks through their participation in such activities.

51.     Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the Snuggie Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing,

20

importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by Plaintiff, thereby making substantial profits and gains to which they are not entitled in law or equity.

52.     Defendants' unauthorized use of the Snuggie Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiff or its authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the Snuggie Marks.

53.     Defendants' actions constitute willful counterfeiting of the Snuggie Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

54.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to Plaintiff, its business, its reputation and its valuable rights in and to the Snuggie Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and its valuable Snuggie Marks.

55.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and

advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (Infringement of Registered Trademarks)
### [115 U.S.C. § 1114/Lanham Act § 32(a)]

56.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

57.     Plaintiff has continuously used the Snuggie Marks in interstate commerce since on or before the dates of first use as reflected in the registration certificate attached hereto as **Exhibit B**.

58.     Plaintiff, as owner of all right, title and interest in and to the Snuggie Marks, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

59.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that Plaintiff is the owner of the federal trademark registrations for the Snuggie Marks.

60.     Defendants did not seek and thus inherently failed to obtain consent or authorization from Plaintiff, as the registered trademark owner of the Snuggie Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell Snuggie Products and/or related products bearing the Snuggie Marks into the stream of commerce.

61.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products, bearing and/or utilizing marks that are reproductions, counterfeits, copies and/or

colorable imitations of the Snuggie Marks and/or which are identical or confusingly similar to the Snuggie Marks.

62.     Defendants knowingly and intentionally reproduced, copied and colorably imitated the Snuggie Marks and applied such reproductions, copies or colorable imitations to packaging, wrappers, receptacles, online listings and/or advertisements used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Defendants' Counterfeit Products.

63.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that Plaintiff is the owner of all rights in and to the Snuggie Marks.

64.     Defendants' egregious and intentional use of the Snuggie Marks in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are Plaintiff's Snuggie Products or are otherwise associated with, or authorized by, Plaintiff.

65.     Defendants' actions have been deliberate and committed with knowledge of Plaintiff's rights and goodwill in the Snuggie Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

66.     Defendants' continued, knowing, and intentional use of the Snuggie Marks without Plaintiff's consent or authorization constitutes intentional infringement of Plaintiff's federally registered Snuggie Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

67.     As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, Plaintiff has suffered substantial monetary loss and irreparable injury, loss and

damage to its business and its valuable rights in and to the Snuggie Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which Plaintiff has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to Plaintiff and the valuable Snuggie Marks.

68.     Based on Defendants' actions as alleged herein, Plaintiff is entitled to injunctive relief, damages for the irreparable harm that Plaintiff has sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### (False Designation of Origin, Passing Off & Unfair Competition)
### [15 U.S.C. § 1125(a)/Lanham Act § 43(a)]

69.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

70.     Plaintiff, as the owner of all right, title and interest in and to the Snuggie Marks, has standing to maintain an action for false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

71.     The Snuggie Marks are inherently distinctive and/or have acquired distinctiveness.

72.     Defendants knowingly and willfully used in commerce products and/or packaging designs that are identical or confusingly or substantially similar to, and constitute reproductions of the Snuggie Marks and Snuggie Works and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying,

offering for sale and/or sale of Counterfeit Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Counterfeit Products are the Snuggie Products or related products, and/or that Defendants' Counterfeit Products are authorized, sponsored, approved, endorsed or licensed by Plaintiff and/or that Defendants are affiliated, connected or associated with Plaintiff, thereby creating a likelihood of confusion by consumers as to the source of such Counterfeit Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the Snuggie Marks and Snuggie Works, to Defendants' substantial profit in blatant disregard of Plaintiff's rights.

73.      By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products that are identical to, confusingly similar to or which constitute colorable imitations of Plaintiff's Snuggie Products using marks and/or artwork that is identical and/or confusingly or substantially similar to, or which constitute colorable imitations of the Snuggie Marks and Snuggie Works, Defendants have traded off the extensive goodwill of Plaintiff and its Snuggie Products and did in fact induce, and intend to, and will continue to induce customers to purchase Defendants' Counterfeit Products, thereby directly and unfairly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff and its Snuggie Marks, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

74.      Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks and artwork that are identical or confusingly or substantially similar to and constitute reproductions of the Snuggie Marks and Snuggie Works would cause confusion, mistake or deception among purchasers, users

and the public.

75.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation Plaintiff, its Snuggie Products, Snuggie Marks and Snuggie Works.

76.     As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiff by depriving Plaintiff of sales of its Snuggie Products and by depriving Plaintiff of the value of its Snuggie Marks and Snuggie Works as commercial assets in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiff and the goodwill and reputation associated with the value of Snuggie Marks and Snuggie Works.

77.     Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiff has sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
### (Federal Copyright Infringement)
### [17 U.S.C. § 501(a)]

78.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

79.     Plaintiff is the exclusive owner of the Snuggie Works.

80.     Defendants had actual notice of Plaintiff's exclusive rights in and to the Snuggie

Works.

81.    Defendants did not attempt and therefore inherently failed to obtain Plaintiff's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiff's Snuggie Products and/or Snuggie Works.

82.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Snuggie Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Infringing Products which bear such Snuggie Works, or artwork that is, at a minimum, substantially similar to the Snuggie Works.

83.    Defendants' unlawful and willful actions as alleged herein constitute infringement of the Snuggie Works, including Plaintiff's exclusive rights to reproduce, distribute and/or sell such Snuggie Works in violation of 17 U.S.C. § 501(a).

84.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to Plaintiff in an amount as yet unknown but to be proven at trial, for which Plaintiff has no adequate remedy at law, and unless enjoined, Defendants will continue to cause, substantial and irreparable harm to Plaintiff.

85.    Based on Defendants' wrongful conduct, Plaintiff is entitled to injunctive relief, Plaintiff's actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### (Violation of Deceptive Acts and Practices Unlawful)
### [N.Y. Gen. Bus. Law § 349]

86.    Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

87.     Through Defendants' unlawful, unauthorized and unlicensed use of the Snuggie

Works and/or Snuggie Marks on or in connection with the manufacturing, importing, exporting,

advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or

otherwise dealing in Counterfeit Products which are identical and/or confusingly or substantially

similar to Plaintiff's Snuggie Product, Defendants have engaged in consumer-oriented conduct

that has adversely affected the public interest and has resulted in injury to consumers in New York.

88.     Defendants' aforementioned conduct was and is a willful and deliberate attempt to

mislead consumers and constitutes the use of deceptive acts or practices in the conduct of business,

trade or commerce.  Such conduct has deceived and materially mislead or has a tendency to deceive

and materially mislead the consuming public, and has injured and will continue to injure Plaintiff's

business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 349.

89.     As a result of Defendants' actions alleged herein, Plaintiff has suffered and will

continue to suffer irreparable harm for which it has no adequate remedy at law.

90.     Pursuant to N.Y. Gen. Bus. Law § 349(h), Plaintiff is entitled to enjoin Defendants'

unlawful conduct as well as obtain damages in an amount to be determined at trial, costs,

disbursements and attorneys' fees.

### SIXTH CAUSE OF ACTION
### (False Advertising Unlawful)
### [N.Y. Gen. Bus. Law § 350]

91.     Plaintiff repleads and incorporates by reference each and every allegation set forth

in the preceding paragraphs as if fully set forth herein.

92.     Without the authorization of Plaintiff, Defendants have used the Snuggie Marks

and/or Snuggie Works and/or marks and/or artwork and/or packaging designs that are identical

and/or confusingly or substantially similar to the Snuggie Marks and/or Snuggie Works in

28

connection with the advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products which are identical and/or confusingly or substantially similar to Plaintiff's Snuggie Products, causing confusion, mistake and deceiving consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

93.     Defendants' aforementioned willful and intentional conduct constitutes false advertising in the conduct of any business, trade or commerce and has injured and will continue to injure Plaintiff's business, reputation and goodwill in violation of N.Y. Gen. Bus. Law § 350.

94.     As a result of Defendants' actions alleged herein, Plaintiff has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

95.     Pursuant to N.Y. Gen. Bus. Law § 350(e), Plaintiff is entitled to enjoin Defendants' unlawful conduct as well as obtain damages in an amount to be determined at trial, costs, disbursements and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]

96.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

97.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products, Defendants have traded off the extensive goodwill of Plaintiff and its Snuggie Products to induce, and did induce and intend and will continue to induce, customers to purchase their Counterfeit Products, thereby directly competing with Plaintiff.  Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and

reputation of Plaintiff, which Plaintiff has amassed through its nationwide marketing, advertising, sales and consumer recognition.

98.     Defendants' advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products was and is in violation and derogation of Plaintiff's rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' Counterfeit Products.

99.     Defendants knew, or by the exercise of reasonable care should have known, that their advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products and their continuing advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products would cause confusion and mistake, or deceive purchasers, users and the public.

100.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiff's rights, and for the wrongful purpose of injuring Plaintiff, and its competitive position while benefiting Defendants.

101.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its Snuggie Products in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law, and Plaintiff has been and will continue to be deprived of the value of its Snuggie Marks and Snuggie Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiff has no adequate remedy at law.

102.   As a result of Defendants' actions alleged herein, Plaintiff is entitled to injunctive relief, an order granting Plaintiff's damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)
### [New York Common Law]

103.   Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

104.   By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

105.   Defendants' retention of monies gained through their deceptive business practices, infringement, acts of deceit and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants, inclusive, and each of them, as follows:

A.   For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3) and treble damages in the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.   In the alternative to Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in

connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c)  in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which Plaintiff may elect prior to the rendering of final judgment;

C.     For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for willful trademark infringement of Plaintiff's federally registered Snuggie Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.     For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Snuggie Works under 17 U.S.C. § 501(a);

F.     In the alternative to Plaintiff's actual damages and Defendants' profits for copyright infringement of the Snuggie Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 USC § 504(c) for willful copyright infringement, which Plaintiff may elect prior to the rendering of final judgment;

G.     For an award of damages in an amount to be proven at trial for deceptive acts and practices unlawful pursuant to N.Y. Gen. Bus. Law § 349(h);

H.     For an award of damages to be proven at trial for false advertising pursuant to N.Y. Gen. Bus. Law § 350(e);

I.      For an award of damages to be proven at trial for common law unfair competition;

J.      For an award of damages in an amount to be proven at trial for unjust enrichment;

K.      For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

      i.      manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Infringing and/or Counterfeit Products;

     ii.      directly or indirectly infringing in any manner any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Snuggie Marks or Snuggie Works;

   iii.      using any reproduction, counterfeit, copy or colorable imitation of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Snuggie Marks and Snuggie Works to identify any goods or services not authorized by Plaintiff;

   iv.      using any of Plaintiff's trademarks, copyrights or other rights (whether now in existence or hereafter created) including, without limitation, the Snuggie Works or Snuggie Marks, or any other marks or artwork that are confusingly or substantially similar to the Snuggie Marks or Snuggie Works, on or in connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for

sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiff;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiff;

viii.   engaging in any other act in derogation of Plaintiff's rights;

ix.   secreting, destroying, altering, removing, or otherwise dealing with the Counterfeit Products or any books or records that contain any information relating to manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

x.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any

34

computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant Storefronts, any money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) ("Defendants' Assets") from or to financial accounts associated with or utilized by any Defendant or any Defendant's User Accounts or Merchant Storefronts (whether said account is located in the U.S. or abroad) ("Defendants' Financial Accounts"), and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

xi.  from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xii.  effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any Final Judgment or Order in this action;

xiii.  providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiv.  instructing, assisting, aiding or abetting any other person or entity in engaging in or performing any of the activities referred to in subparagraphs (i) through (xiii) above; and

L.      For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiff for destruction any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation, the Snuggie Marks or Snuggie Works, or bear any marks that are confusingly or substantially similar to the Snuggie Marks or Snuggie Works;

M.      For an order of the Court requiring that Defendants deliver up for destruction to Plaintiff any and all Infringing and/or Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiff's trademarks, copyrights or other rights including, without limitation, the Snuggie Marks or Snuggie Works, or bear any marks that are confusingly or substantially similar to the Snuggie Marks or Snuggie Works pursuant to 15 U.S.C. § 1118;

N.      For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Infringing and/or Counterfeit Products as described herein, including prejudgment interest;

O.      For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiff;

P.      For an award of exemplary or punitive damages in an amount to be determined by

36

the Court;

Q.     For Plaintiff's reasonable attorneys' fees;

R.     For all costs of suit; and

S.     For such other and further relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Dated: October 3, 2018                    Respectfully submitted,

                                          EPSTEIN DRANGEL LLP

                                          BY: _____
                                          Brieanne Scully (BS 3711)
                                          bscully@ipcounselors.com
                                          Spencer Wolgang (SW 2389)
                                          swolgang@ipcounselors.com
                                          Mary Kate Brennan (MB 5595)
                                          mbrennan@ipcounselors.com
                                          Ashly E. Sands (AS 7715)
                                          asands@ipcounselors.com
                                          Jason M. Drangel (JD 7204)
                                          jdrangel@ipcounselors.com
                                          60 East 42nd Street, Suite 2520
                                          New York, NY 10165
                                          Telephone:     (212) 292-5390
                                          Facsimile:     (212) 292-5391
                                          *Attorneys for Plaintiff*
                                          *Allstar Marketing Group*

# EXHIBIT A

# True Touch Product Packaging and Product







# EXHIBIT B

**Int. Cl.: 25**

**Prior U.S. Cls.: 22 and 39**

**Reg. No. 2,351,180**

## United States Patent and Trademark Office

**Registered May 23, 2000**

### TRADEMARK
### PRINCIPAL REGISTER



ALPHA MILLS CORPORATION (PENNSYLVANIA
CORPORATION)
122 MARGARETTA STREET
SCHUYLKILL HAVEN, PA 17972

FOR: APPAREL FOR LADIES AND GIRLS, NAME-
LY, KNITTED UNDERWEAR, VESTS, CAMISOLES,
LONG AND SHORT SLEEVED TOPS, ANKLE PANT,

ABOVE-KNEE PANT, AND BELOW-KNEE PANT, IN
CLASS 25 (U.S. CLS. 22 AND 39).

FIRST USE 5–20–1958; IN COMMERCE 2–12–1988.

THE DRAWING IS LINED FOR THE COLOR RED.

SER. NO. 75–444,522, FILED 3–4–1998.

RAUL CORDOVA, EXAMINING ATTORNEY

1



# United States of America

## United States Patent and Trademark Office

# SNUGGIE

**Reg. No. 3,775,590**  ALLSTAR MARKETING GROUP, LLC (NEW YORK LIMITED LIABILITY COMPANY)
4 SKYLINE DRIVE
**Registered Apr. 13, 2010** HAWTHORNE, NY 10532

**Int. Cl.: 24**  FOR: FLEECE BLANKETS AND THROWS, IN CLASS 24 (U.S. CLS. 42 AND 50).

FIRST USE 11-14-2008; IN COMMERCE 11-14-2008.

**TRADEMARK**

**PRINCIPAL REGISTER**  THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-534,067, FILED 7-29-2008.

COLLEEN KEARNEY, EXAMINING ATTORNEY



*David J. Kappos*

Director of the United States Patent and Trademark Office

2

# United States of America

## United States Patent and Trademark Office

# SNUGGIE

**Reg. No. 4,115,279**

**Registered Mar. 20, 2012**

ALLSTAR MARKETING GROUP, LLC (NEW YORK LIMITED LIABILITY COMPANY)
2 SKYLINE DRIVE
HAWTHORNE, NY 10532

**Int. Cl.: 20**

FOR: PILLOWS, IN CLASS 20 (U.S. CLS. 2, 13, 22, 25, 32 AND 50).

FIRST USE 9-22-2010; IN COMMERCE 9-22-2010.

**TRADEMARK**

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-680,428, FILED 2-27-2009.

MICHAEL SOUDERS, EXAMINING ATTORNEY



Director of the United States Patent and Trademark Office

---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL
TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE
DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten Years\***
**What and When to File:**

> ***First Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) between the
> 5th and 6th years after the registration date. *See* 15 U.S.C. §§1058, 1141k. If the declaration is
> accepted, the registration will continue in force for the remainder of the ten-year period, calculated
> from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
> federal court.

> ***Second Filing Deadline:*** You must file a Declaration of Use (or Excusable Nonuse) **and** an
> Application for Renewal between the 9th and 10th years after the registration date.\*
> *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

> You must file a Declaration of Use (or Excusable Nonuse) **and** an Application for Renewal between
> every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

---

**The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or
reminder of these filing requirements.**

---

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date). The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration. *See* 15 U.S.C. §1141j. For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the
USPTO website for further information. With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

# SNUGGIE

**Reg. No. 4,418,776**
**Registered Oct. 15, 2013**

ALLSTAR MARKETING GROUP, LLC (NEW YORK LIMITED LIABILITY COMPANY)
2 SKYLINE DRIVE
HAWTHORNE, NY 10532

**Int. Cl.: 25**

FOR: APPAREL, NAMELY, PAJAMAS, NIGHTGOWNS, DRESSING GOWNS, BATHROBES, SLIPPERS, SOCKS, HATS, CAPS, GLOVES, MITTENS, IN CLASS 25 (U.S. CLS. 22 AND 39).

**TRADEMARK**

FIRST USE 9-22-2010; IN COMMERCE 9-22-2010.

**PRINCIPAL REGISTER**

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 2,351,180.

SN 77-680,418, FILED 2-27-2009.

MICHAEL SOUDERS, EXAMINING ATTORNEY



Deputy Director of the United States Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL**
> **TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE**
> **DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten Years\***
**What and When to File:**

>    *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the
>    5th and 6th years after the registration date.  *See* 15 U.S.C. §§1058, 1141k.  If the declaration is
>    accepted, the registration will continue in force for the remainder of the ten-year period, calculated
>    from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a
>    federal court.
>
>    *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) **and** an
>    Application for Renewal between the 9th and 10th years after the registration date.\*
>    *See* 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

>    You must file a Declaration of Use (or Excusable Nonuse)  **and** an Application for Renewal between
>    every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above
with the payment of an additional fee.

> **The United States Patent and Trademark Office (USPTO) will NOT send you any future notice or**
> **reminder of these filing requirements.**

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with
an extension of protection to the United States under the Madrid Protocol must timely file the Declarations
of Use (or Excusable Nonuse) referenced above directly with the USPTO. The time periods for filing are
based on the U.S. registration date (not the international registration date).  The deadlines and grace periods
for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.
*See* 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications
at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the
International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol,
before the expiration of each ten-year term of protection, calculated from the date of the international
registration.  *See* 15 U.S.C. §1141j.  For more information and renewal forms for the international registration,
see http://www.wipo.int/madrid/en/.

**NOTE:   Fees and requirements for maintaining registrations are subject to change.   Please check the
USPTO website for further information.   With the exception of renewal applications for registered
extensions of protection, you can file the registration maintenance documents referenced above online
at** http://www.uspto.gov.

# United States of America

## United States Patent and Trademark Office

# Snuggie

**Reg. No. 5,190,965**

**Registered Apr. 25, 2017**

**Int. Cl.: 20, 24**

**Trademark**

**Principal Register**

Allstar Marketing Group, LLC (NEW YORK LIMITED LIABILITY COMPANY)
2 Skyline Drive
Hawthorne, NY 10172

CLASS 20: pillows

FIRST USE 4-00-2010; IN COMMERCE 4-00-2010

CLASS 24: Blankets, namely, Fleece blankets, Throws, and Pet blankets

FIRST USE 4-00-2010; IN COMMERCE 4-00-2010

The mark consists of the word "SNUGGIE" presented in stylized form.

OWNER OF U.S. REG. NO. 3775590, 2351180, 3832877

SER. NO. 87-180,537, FILED 09-22-2016
CLAUDIA GARCIA, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

> **REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**
>
> **WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

**Requirements in the First Ten  Years***
**What and When to File:**

- *First Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:*  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and  an  Application for  Renewal between every 9th and 10th-year period, calculated from the registration date.*

**Grace Period Filings***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO.  Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner  Address Forms available at** http://www.uspto.gov.

# EXHIBIT C



## Public Catalog

 Copyright Catalog (1978 to present)

Search Request: Left Anchored Copyright Number = vau001026184

Search Results: Displaying 1 of 1 entries



Labeled View

*Color copy of blue packaging.*

| | |
|---|---|
| **Type of Work:** | Visual Material |
| **Registration Number / Date:** | VAu001026184 / 2010-06-10 |
| **Application Title:** | Snuggie Blue Packaging (2010) |
| **Title:** | Color copy of blue packaging. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Allstar Marketing Group, LLC. Address: 4 Skyline Drive, Hawthorne, NY, 10532, United States. |
| **Date of Creation:** | 2010 |
| **Authorship on Application:** | Allstar Marketing Group, LLC, employer for hire; Domicile: United States; Citizenship: United States. Authorship: text, photograph(s) |
| **Rights and Permissions:** | Brendan P. McFeely, Kane Kessler, P.C., 1350 Avenue of the Americas, 26th Floor, New York, NY, 10019, United States, (212) 541-6222, bmcfeely@kanekessler.com |
| **Names:** | Allstar Marketing Group, LLC |



| Save, Print and Email (**Help Page**) | |
|---|---|
| Select Download Format   Full Record ▼ | Format for Print/Save |
| Enter your email address: | Email |

Help    Search    History    Titles    Start Over

Contact Us   |   Request Copies   |   Get a Search Estimate   |   Frequently Asked Questions (FAQs) about Copyright   |
Copyright Office Home Page   |   Library of Congress Home Page



**Help** **Search** **History** **Titles** **Start Over**

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = TX0007001784
Search Results: Displaying 1 of 1 entries


previous    next

Labeled View

### *Snuggie Website (getsnuggie.com)*

|  |  |
|---|---|
| **Type of Work:** | Text |
| **Registration Number / Date:** | TX0007001784 / 2009-03-25 |
| **Application Title:** | Snuggie Website (getsnuggie.com) |
| **Title:** | Snuggie Website (getsnuggie.com) |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Allstar Marketing Group, LLC. Address: 4 Skyline Drive, Hawthorne, NY, 10532, United States. |
| **Date of Creation:** | 2008 |
| **Date of Publication:** | 2008-08-15 |
| **Nation of First Publication:** | United States |
| **Authorship on Application:** | Allstar Marketing Group, LLC, employer for hire; Domicile: United States; Citizenship: United States. Authorship: text, photograph(s), artwork. |
| **Rights and Permissions:** | Brendan P. McFeely, Kane Kessler, P.C., 1350 Avenue of the Americas, 26th Floor, New York, NY, 10019, (212) 541-6222, bmcfeely@kanekessler.com |
| **Copyright Note:** | C.O. correspondence. |
| **Names:** | Allstar Marketing Group, LLC |


previous    next

| Save, Print and Email (**Help Page**) |
|---|
| Select Download Format  Full Record ▼  Format for Print/Save |
| Enter your email address:  _____  Email |

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page